EDWARD A. SACCONE AND EILEEN SACCONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saccone v. Commissioner
Docket No. 251-77.
United States Tax Court
T.C. Memo 1979-482; 1979 Tax Ct. Memo LEXIS 46; 39 T.C.M. (CCH) 616; T.C.M. (RIA) 79482; December 3, 1979, Filed Edward A. Saccone, pro se. Jack H. Klinghoffer, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to section 7456(c) of the Code [1] and General Order No. 6 of this Court, 69 T.C. XV. [2] The Court agrees with the adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CANTREL: Special Trial Judge: Respondent determined a deficiency *48 in petitioners' Federal income tax for 1973 in the amount of $2,686.16. Concessions having been made by both parties, the sole issue remaining for determination is whether the costs of renovating an apartment owned and rented by petitioners are deductible as a casualty loss under section 165 or whether such costs should be capitalized. FINDINGS OF FACT Petitioners, who resided at all relevant times at 52 Willow drive, New Rochelle, New York, timely filed their joint Federal income tax return for 1973 with the Internal Revenue Service. Edward A. Saccone will be referred to herein as petitioner. Petitioners claimed deductions for numerous items on their 1973 return; respondent, in his notice of deficiency, made adjustments to several of the claimed deductions as follows: Amount
Amount
Net
Item
Claimed
Allowed
Adjustment
Rental expense
$ 2,273.00
$2,904.00
( $ 631.00)
Depreciation
776.00
1,957.00
( 1,281.00) [3]
Interest expense
1,937.00
1,707.00
230.00
Real estate tax
619.00
824.00
( 207.00)[4]
Casualty loss
12,320.00
0
12,320.00
Medical expense
2,658.00
2,171.00
487.00
Statutory medical
adjustment
( 76.00)
Total adjustment to income
$10,842.00
*49 Petitioners stipulated that their total deductible interest expense for 1973 is $1,707, as determined by respondent in his notice of deficiency. They further stipulated that they can only substantiate $3,518 of the claimed $4,005 deducted on their return for medical and dental expenses. The amount allowable as a medical expense deduction depends on the outcome of all of the adjustments and issues involved in this case due to the automatic statutory adjustment relating to adjusted gross income. Respondent stipulated that petitioners are entitled to a rental expense deduction, exclusive of depreciation, in the amount *50 of $2,904. He further stipulated that petitioners are entitled to a real estate tax deduction in the amount of $826. Petitioners deducted $697.50 for depreciation on one-half of their two-family house, based upon an estimated useful life for the house of 20 years. Respondent in his notice of deficiency allowed depreciation on the house in the amount of $418.50, on the basis that the house had a remaining estimated useful life of 25 years. Petitioners also deducted $78 for depreciation on improvements made to their two-family house in 1971 based upon an estimated useful life for the improvements of 20 years. Respondent in his notice of deficiency allowed depreciation on the improvements in the amount of $59.50 on the basis that the improvements had a remaining estimated useful life of 25 years. The parties agreed at trial that the house and the improvements have a useful life of 20 years. Petitioner and his family lived with his mother for sometime prior to October of 1967, at which time his mother's house was condemned by the State of New York for highway construction. Petitioner felt an urgent need to quickly obtain a house for his wife and several daughters and hurriedly *51 purchased a two-family house at 52 William Drive, New Rochelle, New York, in October of 1967. At the time he purchased the house a tenant was presently renting and living in the first floor and basement. Before closing the sale on the house in 1967 he inspected the first floor apartment and found it well maintained and in good condition. In order to quickly close the sale of the house, he agreed to the terms of a lease with the existing tenant that allowed him no access to the first floor or basement except to repair the boiler and heating system. Petitioner rented the first-floor apartment for the next six years to the existing tenant and never entered the apartment in accordance with the lease. In 1973 a neighbor spotted smoke in the first-floor apartment and called the Fire Department. The Fire Department discovered that the fire was very minor and caused no damage to the apartment. Although the actual fire was of little consequence or concern to the Fire Department, they were disturbed by the unsanitary, unsafe, and uninhabitable condition of the premises. Thus, the Fire Department and Health Department served on petitioner a summons citing numerous housing code violations *52 existing in the first-floor apartment. The Health Department secured access to the first-floor apartment for petitioner, and upon inspecting the premises he found it unsanitary and in need of great repair. Petitioner notified the tenant that he expected the premises to be cleaned and that he would repair the premises and increase the rent. Thereupon, the tenant vacated the apartment after this incident, and petitioner thereafter was forbidden by the Health Department to rent the apartment until it was renovated, inspected, and a "Certificate of Occupancy" issued. Petitioner financed a fourth mortgage on the house to obtain money to make extensive renovations on the first-floor apartment. In order to receive the Health Department's approval and obtain a new tenant, petitioner expended $12,320 to make extensive renovations which included installing drop ceilings, kitchen cabinets, wall paneling, new pipes, new fixtures, a sink, kitchen appliances, a new circuit breaker panel, new outlets, and flooring. After restoring the apartment petitioners received approval from the local authorities and rented the apartment to a new tenant for more than double the old rent. Petitioners deducted *53 the $12,320 spent to renovate the apartment on their 1973 return as a casualty loss. Respondent determined in his notice of deficiency that the $12,320 constituted a capital expenditure and allowed a deduction for depreciation in the amount of $493 for each of the years 1973 through 1975 on the basis of a useful life of 25 years. The parties agreed at trial that if the Court finds that the renovation expenses do not constitute a casualty loss the improvements have a useful life of 20 years. OPINION
Section 165(a) provides that, "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated by insurance or otherwise." In the case of an individual this deduction is limited under section 165(c) to: (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * Petitioner contends that his situation falls within the meaning of "casualty loss" as defined by the Internal Revenue Service *54 as an "event that is (1) identifiable, (2) damaging to property, and (3) sudden, unexpected, and unusual in nature." See White v. Commissioner, 48 T.C. 430, 433 (1967); Rev. Rul. 72-592, 1972-2 C.B. 101. Petitioner's contention is unfounded. The record discloses absolutely no evidence of any "identifiable event", let alone a requisite event that was sudden, unexpected, or unusual. To be allowable as a deduction under section 165, a loss must be fixed by an identifiable event. Section 1.165(b), Income Tax Regs.; J. G. Boswell Company v. Commissioner, 302 F.2d 682 (9th Cir. 1962). On this record, we cannot determine when the first-floor apartment deteriorated, how it occurred, or whether the loss was sudden, unexpected, or unusual. Petitioner candidly testified that the fire caused no damage to the property and that none of the $12,320 that he expended was to repair damages caused by the fire. We have in evidence only that petitioner's first-floor apartment was in good living condition when he inspected it in 1967 and that it was uninhabitable and in need of great repair six years later. This Court has repeatedly held that the *55 term "casualty" excludes the "progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941). [5] Any fact finding on our part to explain the deterioration of the apartment during the six-year interim between inspections would be pure conjecture. The burden is upon petitioner to show that respondent's determinations are incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner has failed to meet his burden of showing that he suffered in 1973 a deductible casualty loss as defined under section 165. Both parties erroneously argue the deductibility of the renovation expenses in issue under the provisions of section 165(c)(3), dealing with individual casualty losses for property not connected with the trade or business. The expenses in issue were incurred in petitioner's trade or business of being a landlord. [6] The more determinative *56 issue is whether the renovation expenses incurred by petitioner in 1973 are currently deductible ordinary and necessary business expenses under section 162 or whether such expenses are capital expenditures under section 263 and subject to a depreciation deduction under section 167 over the useful life of the improvements. It is necessary to take into consideration the purpose for which expenditures are made in order to determine whether such expenditures are capital in nature or constitute a current expense. Oberman Manufacturing Co. v. Commissioner, 47 T.C. 471, 482 (1967). The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense under section 162. Such expenditures are distinguishable from those for replacements, alternations, improvements or additions which prolong the useful life of the property, increase its value, or make it adaptable to a different use. Oberman Manufacturing Co. v. Commissioner, supra; Jones v. Commissioner, 24 T.C. 563 (1955), affd. 242 F.2d 616 (5th Cir. 1957); *57 Illinois Merchants Trust Co. v. Commissioner, 4 B.T.A. 103 (1926); sections 1.162-4 and 1.263(a)-1(a)(1), Income Tax Regs. The expenditures involved herein were not made for "incidental repairs" but were made to rehabilitate, restore, and improve an apartment which was condemned as uninhabitable by city authorities. Petitioner hired contractors to restore the ceiling, walls, doors, and floors, and to replace electrical fixtures, plumbing fixtures, and kitchen appliances. After making these improvements the apartment was approved by city authorities and petitioner rented it to a new tenant at more than double the rent charged prior to the improvements. Clearly, the renovating expenditures materially added value to the apartment and gave it a new useful life; thus, they should be capitalized and recovered during the useful life of the repairs, which the parties agree to be 20 years (not 25 years as computed by respondent in his notice of deficiency). [7]
*58 To reflect the concessions made by both parties and our conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
3. The difference between the $776 claimed for depreciation and $1,957, the amount listed as "allowed", is $1,181, not $1,281. We cannot explain this mathematical error. Respondent, however, conceded in his brief and at trial the $1,281 is the correct amount of the net adjustment. ↩
4. The difference between the $619 claimed for real estate taxes and $824, the amount listed as "allowed", is $205, not $207. Respondent stipulated that $207 is the correct net adjudgment and that the correct amount allowed is $826, not $824 as listed in the notice of deficiency.↩
5. See Whiting v. Commissioner, T.C. Memo. 1975-38; Stacey v. Commissioner, T.C. Memo. 1970-127; Berry v. Commissioner, T.C. Memo. 1969-162↩.
6. A loss incurred in a trade or business may be one of several varieties. It might be the excess of ordinary and necessary business expenses (section 162(a)) over the receipts from that business (a net operating loss), or it might be the excess of depreciated cost of an asset used in the business over the amount received on the sale of the asset. Finally, loss by fire or theft, etc., of a business asset would also be a loss incurred in a trade or business; in the latter case, the loss can be treated either as a busines loss or a "casualty" loss. ↩
7. See Brown v. Commissioner, T.C. Memo. 1979-434, and Cavic v. Commissioner, T.C. Memo. 1977-192↩, two recent opinions which are factually indistinguishable from the present case and in which this Court held renovating expenditures to be capital in nature and deductible over the useful life of the improvements.